174 N.J. Super. 32 (1980)
415 A.2d 360
LEE BROWN, PLAINTIFF-APPELLANT,
v.
WALTER SHAW, INDIVIDUALLY AND WALTER SHAW INSURANCE AGENCY, DEFENDANTS-RESPONDENTS, AND LUMBERMENS MUTUAL CASUALTY COMPANY, DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
ARISTA FACTORS, INC., DEFENDANT AND THIRD-PARTY DEFENDANT-RESPONDENT. DOROTHY JACKSON, PLAINTIFF,
v.
LUMBERMENS MUTUAL CASUALTY COMPANY, ARISTA FACTORS, INC. AND WALTER SHAW INSURANCE AGENCY AND WALTER SHAW, INDIVIDUALLY, DEFENDANTS-RESPONDENTS, AND UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, LEE D. BROWN AND OSCAR J. JOHNSON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 22, 1980.
Decided May 9, 1980.
*33 Before Judges FRITZ, KOLE and LANE.
*34 Sally L. Steinberg, Essex-Newark Legal Services, argued the cause for appellant Lee Brown (Mark Goldman, Essex-Newark Legal Services, attorney).
Michael T. Cooney argued the cause for appellants Unsatisfied Claim and Judgment Fund Board and Oscar J. Johnson (Hueston, Hueston & Sheehan, attorneys).
James P. Richardson argued the cause for respondent and cross-appellant Lumbermens Mutual Casualty Company (Pantages, Sellar, Richardson & Stuart, attorneys).
Gerald M. Gorrin argued the cause for respondent Arista Factors, Inc. (Gorrin, Ironson & Whitken, attorneys; Gerald M. Gorrin of counsel; Jeffrey E. Gorrin on the brief).
Respondents Walter Shaw, individually, and Walter Shaw Insurance Agency did not file a brief.
The opinion of the court was delivered by FRITZ, P.J.A.D.
This appeal concerns relative rights among an assigned risk insured, his apparently absconding insurance agent or broker and the firm of that individual, the organization that financed that insurance, the insurance company, a passenger in the insured's car, the driver of another car involved in an accident with the insured, and the Unsatisfied Claim and Judgment Fund. The matter is complex both procedurally and substantively. Its presentation to us is not without omissions and in some cases requires assumptions. To add to the burden inherent in the convoluted and intricate problem, important determinations in at least one of the trial courts involved arrive here without any findings by the trial judge in his grant and denial of a number of vital summary judgment motions. The ultimate irony resides in our conviction that a legal proposition neither argued nor considered below is sufficiently vital, both in the sense of its importance as a public question and with respect to *35 essential justice in this case, that we must not ignore it. Pursuant to the authority of R. 2:10-2 and consistent with its policy pronouncement, we reverse.
In June 1973 Lee D. Brown (Brown), an assigned risk under the Motor Vehicle Security-Responsibility Law (N.J.S.A. 39:6-23 et seq.), obtained auto liability insurance from Lumbermens Mutual Casualty Company (Lumbermens) through Walter Shaw Insurance Agency, a business operated by Walter Shaw as an insurance broker or agent (Shaw). This insurance policy became effective on June 1, 1973 and was to terminate one year later on June 1, 1974. Unable to pay the full amount of the insurance premium ($137), Shaw arranged for Brown to execute a premium finance agreement with Arista Factors, Inc. (Arista). This agreement required Brown to make payments to Arista of $16.38 a month for eight months commencing on July 4, 1973. Brown testified that he also gave Shaw an initial deposit of $40 when he executed the agreement. The finance agreement authorized Arista to pay Lumbermens the full premium due.
This contract further provided that the event of default by Brown in the payment of any installment when due
... shall render the whole unpaid balance of principal hereof immediately due and payable, without notice and if default continues for ten (10) days thereafter, shall constitute an election by the undersigned insured to cancel said policy. It is agreed that, in such event the undersigned insured will promptly return the policy and the payee is hereby authorized to notify the insurance company of such cancellation and to collect and receive from such company all return or unearned premium for application as above mentioned. It is also agreed that the undersigned insured will pay a $5.00 cancellation fee.
To effectuate the foregoing, said insurance company is hereby authorized and directed:
(a) To pay any return premium to said payee which may become due under the policy other than from cancellation; and
(b) To pay any unearned premium to said payee which may become due on account of cancellation of said policy at any time by the undersigned insured, the payee or the insurance company; and

*36 (c) To include the name of the said payee as payee with the undersigned insured in any check or draft issued on account of any loss, which may be or become payable to the undersigned insured, but only in the event it reduces or voids the unearned premium of the policy, and subject however to all mortgagee interest, if any.
Another and different result said to eventuate upon ten-day default in payment appeared elsewhere in the agreement:
Failure to pay an installment within 10 days of due date will result in late charges of a charge equal to a minimum of $1.00 or 5% of such installment or $5.00 which ever is less.
Although the agreement recited Brown's promise to pay to the order of Arista at its place of business and contained an express disavowal of any agency in Shaw, Brown's testimony that Shaw told him he was "to make the payments to him until my payment book came and my insurance policy" is unrefuted.
After receiving the premium finance agreement and the July 4, 1973 payment "on or about August 4, 1973," Arista processed the agreement and "mailed the entire premium for [the] policy to [Lumbermens]." There is evidence that Arista did not receive Brown's payment due on August 4. Accordingly, on August 9 Arista mailed a "late notice letter" to Brown which stated:
Please note that to date, we have not received payment on the above listed loan. We would not like to cancel your insurance and therefore, ask you to please forward your check within five (5) days, so that it will not be necessary for us to take any further steps to collect this loan.
Kindly give this your prompt attention. Thank you.
Brown, who claims that he had paid Shaw the August 4 payment, took the letter to Shaw. In Brown's presence Shaw dialed a number on the telephone and talked to someone apparently from Arista. After Shaw hung up he informed Brown *37 "that there had been a mistake" and "that [Brown's] insurance was all right and [that he] could continue driving."
On August 14 Arista had still not received the August payment from either Brown or Shaw. On that date Arista sent a "cancellation notice" to Brown which stated in pertinent part:
 Date of Notice August 14, 1973
 Effective Date of Cancellation
 August 28, 1973 At 12:01 A.M.
 Standard Time
TO THE NAMED INSURED:
You are hereby notified that your policies listed above are cancelled effective as of the date shown above subject to policy terms and conditions. These policies are cancelled by us in accordance with the authority which you have given us in consideration of our financing the premiums.
IMPORTANT:
IF AN AUTOMOBILE POLICY IS INVOLVED:
PROOF OF FINANCIAL SECURITY IS REQUIRED TO BE MAINTAINED CONTINUOUSLY THROUGHOUT THE REGISTRATION PERIOD AND FAILURE TO MAINTAIN SUCH PROOF OF FINANCIAL SECURITY REQUIRES REVOCATION OF THE REGISTRATION OF THE MOTOR VEHICLE, UNLESS THE REGISTRATION CERTIFICATE AND NUMBER PLATES OF SUCH VEHICLE HAVE BEEN SURRENDERED TO THE COMMISSIONER PRIOR TO THE TIME AT WHICH THE TERMINATION BECOMES EFFECTIVE.
Brown went back to Shaw. He showed him the notice. Shaw told him "the same thing he told me the first time. He told me sometimes the finance company and the service company get mixed up and he said that the policy was all right. He had called the finance company and I could continue driving."
It is apparent that Arista exercised its power of attorney and directed Lumbermens to cancel Brown's insurance policy. It seems that this was done by forwarding to Lumbermens a copy of the "cancellation notice" containing the following preface:
The following is a certified true copy of a Notice of Cancellation which was sent to your insured cancelling the policy listed below and complies with the *38 notice requirement of Section 13 of New Jersey's Insurance Premium Finance Company Act. All return premiums are to be calculated as of the effective date of cancellation indicated. Kindly send your remittance for the gross return premium at your earliest convenience, to our office.
We pause to observe that Arista also thus assured Lumbermens that it had complied with § 13 (obviously N.J.S.A. 17:16D-13) of "New Jersey's Insurance Premium Finance Company Act."
Lumbermens complied, cancelled the policy and returned the premium.
Four days after the purported effective date of the cancellation Brown was driving his car when it was involved in an accident with a motor vehicle being operated by Oscar Johnson (Johnson). Brown and a passenger in his car, Dorothy Jackson (Jackson), were injured. After his release from the hospital Brown took his hospital bills to Shaw and reported the accident. Shaw said nothing to Brown with regard to the fact that his insurance policy had been cancelled.
Brown alleged that "roughly a month later" he called Lumbermens to see what was holding up his claim. He testified that he was told by a Mr. Jung that his policy was "okay" and that Lumbermens was waiting to hear from Oscar Johnson's insurance company before settling his claim. Brown continued to make his regular monthly insurance payments to Shaw through December 1973, and in that month Shaw gave Brown a written statement "saying my policy was good as far as [Shaw's] office is concerned."
Apparently Brown finally called Lumbermens again and this time was told that his insurance policy had been cancelled. Thereafter Lumbermens refused to reimburse Brown for his claim and refused to defend him in this lawsuit which followed.
[The court here reviewed the complicated procedural history of the case]
From the outset of this litigation, and at all times since, the question put in issue by Brown's reply brief [the propriety of *39 the Arista cancellation], previously raised or not, was in our judgment among the most important considerations implicit in the matter. While the different counsel Brown has had  appellate counsel did not argue the motions or try the case  should have seen and raised the issue, and the employment of a reply brief to assert new arguments is improper, State v. Smith, 55 N.J. 476, 488 (1970),[1] Brown is wholly right in his averment that issues of public policy permeate the proposition. Beyond this, our concern for the proper disbursement of public funds might easily have moved us to undertake the question even had it been raised by no one. Finally, the fundamental rights of Brown, who achieved only an 11th grade education, may be deeply involved in this battle with an absconding insurance broker or agent, a sophisticated high risk money lender and an established successful insurance company. In such case, "substantial justice may require that the scope of inquiry be not thus restricted" to matters raised below. Spiegle v. Seaman, 160 N.J. Super. 471, 481 (App.Div. 1978). While ordinarily matters not raised below will not be reviewed on appeal, Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973), general public importance alone will warrant a departure from that rule. Deerfield Estates, Inc. v. East Brunswick Tp., 60 N.J. 115 (1972).
We are entirely satisfied that the matter is of considerable general public importance. In the first place, legislation affecting automobile insurance has always been considered remedial, to be construed to effect the broadest protection of auto accident victims and to limit exclusions by strict construction against the insurer. Motor Club of America v. Phillips, 66 N.J. 277, 293 (1974); Fellippello v. Allstate Ins. Co., 172 N.J. Super. *40 249, 261-262 (App.Div. 1979). This clear and consistent pronouncement of public policy in the State is soundly derived from legislative action determining that policy. Consistent with this, we have no doubt at all that the Insurance Premium Finance Company Act, N.J.S.A. 17:16D-1 et seq. in general and here N.J.S.A. 17:16D-13 in particular, ought to be adjudged to require exact and careful compliance and to be strictly enforced. This is no more than a matter of attention to the public policy of New Jersey and a matter of general public importance.
The significance of the presence of Fund monies in the case highlights our concern. Judge Seidman, then sitting in the Law Division, aptly described our mission in this regard in Feliciano v. Oglesby, 102 N.J. Super. 378 (Law Div. 1968):
The [Unsatisfied Claim and Judgment] Fund is held in trust for the stated purposes and for the costs of administration. Wormack v. Howard, 33 N.J. 139, 143 (1960). The public interest demands that the Fund be administered in a fashion to assure that only those persons legitimately entitled to participate in its benefits are paid therefrom. This is a duty imposed by public policy and owed to the contributors as well as to the general public. Douglas v. Harris [35 N.J. 270, supra. The judiciary of this State is the guardian of the trust moneys represented by the statutory Fund. Szczesny v. Vasquez, 71 N.J. Super. 347, 358 (App.Div. 1962). [At 391]
Accordingly, we have determined to review the issue despite the fact that it was not raised except at the very last minute and then improperly. That review persuades us that Arista did not comply with N.J.S.A. 17:16D-13.
Brown was never advised of the "intent of the premium finance company to cancel the insurance contract" or of his right to cure the default within the minimum ten-day period of the required written notice of intent to cancel. N.J.S.A. 17:16D-13(b). He was told instead that Arista "would not like to cancel your insurance" and that if the policy was cancelled it could not be reinstated. He was dunned for "your check within five (5) *41 days, so that it will not be necessary for us to take any further steps to collect this loan," and a "late charge" was imposed. But he was never advised of an intent to cancel. The next advice he received, which was also sent to the insurance company, was that "your policies [sic] listed above are cancelled" on the "Effective Date of Cancellation" fourteen days later. This document bore a title in solid capital letters: CANCELLATION NOTICE.
Thus Arista clearly did not comply with the statute.
For reasons set forth above, we believe consideration of this failure to comply is essential to a proper and just determination of the rights among the parties contested in the matters on appeal. Because the issue was not raised the judges below did not consider that dereliction. Public policy and essential justice require that this now be done.
All motion orders and judgments below in the matters on appeal are vacated.[2] The matters are consolidated and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs.
NOTES
[1] Beyond the impropriety of presentation of a new issue in a reply brief, counsel also disregarded the requirement of R. 2:6-2(a)(1) declaring it to be "mandatory that any point not presented below be so indicated by including in parenthesis a statement to that effect in the point heading."
[2] This is not intended to disturb the judgment in the Jackson negligence action.