OPINION OF THE COURT
 

 Jones, J.
 

 A premium finance agency is under no duty to the insurer, under section 576 of the Banking Law, with respect to cancellation of an automobile liability insurance policy after default by the insured in payment to the agency of a premium installment, nor does its inaccurate representation to the insurer that the policy has been propery canceled impose on it any liability to the insurer for moneys paid in settlement of a policy claim arising out of an accident occurring after the date of the misrepresentation.
 

 At the time of the events that give rise to this action defendant Broadway Bank was authorized under article 12-B of the Banking Law to engage in the business of a premium finance agency, advancing premiums for an insurance con
 
 *572
 
 tract on behalf of an insured who, by written agreement, promised to repay the bank in regular installments. The statute authorized the inclusion in the premium finance agreement of a provision empowering the bank to cancel the insurance policy to which the agreement related in the event of the insured’s failure to make the agreed installment payments to the bank. Procedures prescribed for accomplishing such a cancellation — including in particular 10 days’ prior notice to the insured with three additional days if the notice were mailed — were set out in section 576 of the Banking Law.
 

 On June 19, 1972 Shelva Ludwig, through her insurance agent, executed a premium finance agreement with defendant, in connection with plaintiff’s issuance to her of an automobile liability policy through the assigned risk pool, by which she agreed to make monthly payments to the bank and authorized the bank to cancel the policy in the event of her default. Defendant bank thereafter paid the full premium for the policy to plaintiff insurer. The insured apparently defaulted in payment of the installment due the bank in July and, on July 21, 1972, the bank mailed a default notice to her and to her insurance agent, urging payment to avoid cancellation and containing an entry of August 24, 1972 as the effective date of cancellation, without however a check mark in a box which was to be marked if the paper was to serve as a cancellation notice. No copy of this paper was sent to the insurer.
 

 One month later, on August 21, 1972, when the insured still had not paid the installments due the bank, the bank sent to her and to her insurance agent, as well as to the insurer, a default notice identical to that sent in July except that this time there was a mark in the box indicating that it was a cancellation notice. The effective date of cancellation was again stated as August 24, 1972 and, as on the prior notice, the line titled “Original Date of Notice” bore the date “7/21/72” — thereby erroneously representing that the statutory period which must elapse between notice of cancellation to the insured and the effective date of cancellation had been complied with. As a consequence of the receipt of its copy of this paper, the insurer, believing that
 
 *573
 
 the policy had been canceled, refunded the unearned portion of the policy premium ($243) to the bank.
 

 On September 21, 1972 the vehicle that had been covered by plaintiff’s policy was involved in an accident resulting in personal injuries to a third party. Despite the insurer’s claim that the policy had been canceled prior to the date of the accident, it was judicially determined in independent litigation that there had been no effective cancellation
 
 (Balboa Ins. Co. v Widener,
 
 47 AD2d 815). The insurer subsequently settled the personal injury action arising out of the accident for $25,000. In the present action against the bank, the insurer now seeks to recover from the bank the amount of the settlement together with attorney’s fees and expenses incurred by it incidental to the defense of the personal injury claim. The theory of the action is that the bank acted negligently in attempting to cancel the policy previously issued by the insurer and misrepresented to the insurer that it had been effectively canceled and that the damages now sought to be recovered were incurred by reason of the bank’s negligence.
 

 After a non jury trial in which the facts were stipulated Supreme Court concluded that the bank was not the agent of the insurer and therefore could not be held liable for negligent performance of any purported agent’s duty properly to effect a cancellation of the policy, but that the insurer had established a negligent misrepresentation by the bank — that the policy had been properly canceled — sufficient to impose liability to the insurer for the proximate consequences of the bank’s misconduct. Determining however that the settlement and expenses incurred in connection with the personal injury action against its insured were the result of the insurer’s issuance of its policy, which it would have continued in force had the bank taken no action at all, the court awarded plaintiff a judgment for only $243, the amount of the unearned premium refund made by the insurer to the bank,
 
 *
 
 which it found was the only proximate consequence of the actions of the defendant.
 

 
 *574
 
 On appeal by the insurer, the Appellate Division unanimously affirmed the judgment, stating that because the policy had not in fact been canceled there should have been no return to the bank of the unearned premium; accordingly plaintiff insurer was entitled to recover back that amount. With respect to the insurer’s claim for indemnification for the settlement and expenses incident to the personal injury action against the insured, the court found, as had the trial court, that the bank had not been an agent of the insurer and Concluded further that there had not otherwise been any such relationship between the parties as to create a duty on the bank to take effective action to cancel the Ludwig policy or not negligently to misrepresent to the insurer that it had done so. Additionally, the court observed that, had there been any duty owing, the insurer, by its contributory negligence in failing to make certain that proper notice to effect cancellation had been given, was barred from recovering from the bank. We granted leave to appeal.
 

 As the courts below and the parties all have recognized, the critical issue here is whether there is any predicate for the duty plaintiff insurer would have us impose on defendant bank — a duty not to represent to the insurer that a proper notice of cancellation of one of its liability policies had been sent to the insured when in fact it had not. Concluding, as we do, that plaintiff has failed to establish the existence of any such duty, breach of which was the cause of the economic loss sustained by the insurer in discharging its obligations under the policy of insurance, we affirm the order of the Appellate Division.
 

 At the outset we observe that plaintiff cites no decided case in this or other jurisdictions in which its argument has been accepted. Rather, it seizes on the definition of the cause of action for negligent misrepresentation contained in
 
 lnternational Prods. Co. v Erie R. R. Co.
 
 (244 NY 331, 338) and, as a foundation for its claim that there here existed the necessary element of a relationship between the parties giving rise on the part of one (here, the bank) to give accurate information, points to section 576 of the Banking Law. It argues that, because that statute vested in the bank, as premium finance, agency, the exclusive power to cancel
 
 *575
 
 the Ludwig policy for default in payment of installments due it, the bank was under an obligation to the insurer to send proper notice of cancellation to the insured and, as an extrapolation, an obligation not to misrepresent to the insurer that it had done so.
 

 The difficulty with plaintiff’s argument is that there is no basis for the consequence it would attach to the power vested in the bank as financer of the premium due and paid to the insurer. Plaintiff concedes that the bank was not obligated by the statute to cancel Ludwig’s policy when she defaulted in her payments to it; the choice whether to do so was with the bank and the carrier had no right either to demand or expect cancellation of the obligation it had assumed when it entered into the contract of insurance. The statutory authorization for cancellation by the financing agency was for the benefit of the agency, which could thereby recoup a part of the premium it had advanced to the insurer. When the bank chose to exercise that authority it was acting solely for its own interest and not for the purpose of extending any advantage to the carrier; indeed, cancellation of a policy, the premium for which had been fully paid to the insurer, would normally be regarded at that time as contrary to the interests of the carrier which presumably was .interested in writing insurance. It was only the subsequent, improvidential loss under the policy which prompted the insurer to seek to shift the economic burden of the risk it had been paid to underwrite. The present case is therefore quite different from
 
 White v Guarente
 
 (43 NY2d 356), on which plaintiff relies, in which the defendants’ accountants had contractually undertaken to perform auditing services for the purpose and with the intention of benefiting a partnership of which the plaintiff, suing for negligent performance of the services, was a member.
 

 Plaintiff asserts that, even if defendant bank was not obliged to cancel the Ludwig policy, nevertheless when it undertook to work a cancellation it was bound to complete the cancellation in a careful manner, an adaptation of the principle stated in
 
 Glanzer v Shepard
 
 (233 NY 236, 239) that “one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully,
 
 *576
 
 if he acts at all”. When the rule has been held applicable, it has not been applied to one, as the bank here, who justifiably undertakes a course of conduct in his own behalf and in furtherance of his own interests, but to one whose effort is extended for the purpose of aiding or serving another (e.g., Wolf
 
 v City of New York,
 
 39 NY2d 568 [fire lieutenant advising volunteer fireman as to route of departure from roof of burning building] ;
 
 Zalak v Carroll,
 
 15 NY2d 753 [relatives providing day care for child of working mother];
 
 Marks v Nambil Realty Co.,
 
 245 NY 256 [landlord, under no duty to repair, repairing broken stairway for tenant]).
 

 The present case is very like
 
 Gerace v Liberty Mut. Ins. Co.
 
 (264 F Supp 95) in which the court dismissed an action against a contractor’s liability insurance carrier by a workman injured by a defective condition on a construction site previously inspected by the carrier. In rejecting the claim that the carrier was under a duty to make inspections with sufficient care to discover the defective condition the court said(p 97):
 

 “There is a general principle of law that a person who volunteers to do something that he is under no obligation to do, must nevertheless use due care in carrying on the voluntary activity. This doctrine applies if the volunteered act is undertaken for the benefit of someone else. A Good Samaritan who carelessly injures the person he is trying to help may perhaps be liable for his negligence.
 

 “In this case, however, the insurance carrier did not undertake to perform a voluntary act for the benefit of someone else. It did so for its own protection in order to reduce risks that might give rise to liability on the policy.”
 

 So here, the bank in attempting to cancel the Ludwig policy was not doing it to benefit someone else, but for its own benefit in order that it might recover that portion of the premium it had advanced to the insurer that would be unearned if the policy were canceled.
 

 A short answer to plaintiff’s claim (with a citation to
 
 Palsgraf v Long Is. R. R. Co.,
 
 248 NY 339) that the duty for which it argues existed because the bank could have
 
 *577
 
 foreseen the consequences to the insurer if the policy were not effectively canceled is found in our statement in
 
 Pulka v Edelman
 
 (40 NY2d 781, 785): “Foreseeability should not be confused with duty. The principle expressed in
 
 Palsgraf v Long Is. R. R. Co.
 
 (248 NY 339,
 
 supra),
 
 quoted by the dissent [the same quote tendered by plaintiff in the present case], is applicable to determine the scope of duty —only after it has been determined that there is a duty. Since there is no duty here, that principle is inapplicable”.
 

 Finally, with respect to duty, public policy argues strongly against the creation of the duty sought by plaintiff and never heretofore recognized in this, or apparently any other, jurisdiction. If indeed a financial institution or an agency authorized to advance insurance premiums on the strength of premium finance agreements were to be subjected not merely to a loss of recoupment of the premium advanced by it but also to contingent liability for whatever loss (potentially large) might befall an insurer under its policy obligations in the event the lender ineffectively attempted to cancel a policy on the insured’s default in payments to it, qualifying banks and lending units might well decline to act as premium financing agencies. The gain to the lender (interest chargeable on the premium advanced— in this case, $20.94) might look all too small when contrasted with the potential liability (in this case, $25,000 plus) to make the premium finance agreement an attractive, or even palatable, lending device. That a lender might avoid the risk of liability by foregoing the exercise of its right of cancellation would make the agreement no more acceptable inasmuch as that election would deprive the lender of the only ready method available to it to reduce its loss when a borrower defaults. If, as might therefore be expected, lenders chose not to engage in the premium finance arrangements authorized by article 12-B of the Banking Law, the intent of the Legislature in enacting it would be effectively frustrated. That prospect alone weighs heavily against imposition of the duty for which plaintiff argues.
 

 The dependence placed both by plaintiff and by a fellow insurance carrier which has filed a brief
 
 amicus curiae
 
 on
 
 *578
 

 Johnson v General Mut. Ins. Co.
 
 (24 NY2d 42) is unwarranted. In that case we simply upheld a denial of a motion for summary judgment by an insurance carrier against a premium finance agency on a claim of defective cancellation of a policy by the agency, without passing on whether such an action would lie.
 

 One other aspect of this litigation merits comment — the question of plaintiff’s asserted reliance on defendant’s negligent misrepresentation that the Ludwig policy had been canceled and the claim that that reliance resulted in the damage of more than $25,000 flowing from the defense and settlement of the personal injury action which was within the policy coverage. Reliance, as that term describes an element of an action for negligent misrepresentation, connotes something more than simply a bare hope or anticipation; in order that liability result from a negligent statement the words communicated must be “words upon which others were expected to rely and upon which they did act or failed to act to their damage”
 
 (White v Guarente,
 
 43 NY2d 356, 363,
 
 supra).
 
 In the case before us the only action plaintiff took in reliance on the misrepresentation made by defendant that the August 21, 1972 notice of policy cancellation had been timely sent to the insured was the refund to the bank of the $243 unearned premium, which the bank unsuccessfully attempted to return and which has been awarded to plaintiff by the judgment affirmed by the order we are reviewing. Beyond that refund the insurer neither did nor omitted to do anything with respect to the policy it had issued to the insured Ludwig. It. does not suggest that there is anything it would have done — or indeed could have done — to have relieved itself of the contractual obligation to which it was bound, by which it was subjected to a significant liability, if the bank had not erroneously led it to believe that the policy had been canceled. It was the insurance contract entered into by plaintiff, by which for a premium it undertook the very risk that opérated when the Ludwig vehicle became involved in a collision, which was the predicate for its loss; it has no complaint because defendant bank, in ineffectively protecting itself, failed to exonerate it from that contractual obligation. That it lost
 
 *579
 
 a windfall it might have had had the bank effectively canceled the policy before the accident occurred is no ground for shifting to the bank the economic obligation which stemmed from its own insurance agreement.
 

 For the reasons stated, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Meyer concur.
 

 Order affirmed.
 

 *
 

 In open court defendant acknowledged that plaintiff was entitled to recovery of this item, stating without contradiction by the insurer that the bank had attempted to return the premium refund to the insurer shortly after it had been received by the bank.