217 N.J. Super. 101 (1987)
524 A.2d 1306
KENDE LEASING CORP., D/B/A K.B. TRUCKING, PLAINTIFF-APPELLANT,
v.
A.I. CREDIT CORP., DEFENDANT-RESPONDENT, AND F.T.P. AGENCY, INC. AND R.L.I. INSURANCE AGENCY, INC., DEFENDANTS, AND LUMBERMENS MUTUAL CASUALTY CO., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1987.
Decided April 24, 1987.
*103 Before Judges MICHELS, SKILLMAN and LANDAU.
Allan Maitlin, argued the cause for appellants Lumbermens Mutual Casualty Co., and Kende Leasing Corp., d/b/a K.B. Trucking (Feuerstein, Sachs, Maitlin & Fleming, attorneys; Allan Maitlin, of counsel and on the brief).
Herbert Klitzner, attorney for respondent A.I. Credit Corp.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Lumbermens Mutual Casualty Co. (Lumbermens), individually and as assignee of plaintiff Kende Leasing Corp., d/b/a K.B. Trucking (Kende), appeals from a summary judgment of the Law Division that: (1) declared that the motor truck cargo liability insurance policy issued by it to Kende was in full force and effect; (2) dismissed Kende's claim against defendant A.I. Credit Corp. (Credit); (3) dismissed Lumbermens' claims against Credit other than for the sum of $478.93 in unearned premiums which it had returned to Credit following the alleged cancellation of the policy Lumbermens had issued to Kende, and (4) denied without prejudice Kende's application for damages, counsel fees and costs.
This complex matter arises out of a motor truck cargo liability insurance policy issued to Kende by Lumbermens on June 15, 1982. Under the terms of the policy, Kende was *104 required to pay an annual premium of $5,000. On June 30, 1982, Kende entered into a premium financing agreement with Credit. Pursuant to the agreement, Credit agreed to pay the $5,000 premium to Lumbermens in return for which Kende agreed to pay Credit $5,310.37 in nine monthly installments of $478.93 plus a $1,000 cash down payment. Kende's repayment period was to commence August 9, 1982, and payments were due on the ninth day of each month through April 9, 1983. Kende was also to assign to Credit as collateral a security interest in "any and all unearned return premiums which may become payable under" the policy. Moreover, in the event that Kende defaulted in its obligations under the agreement, the entire unpaid balance became due and payable and Credit was given power of attorney to cancel Kende's policy "upon expiration of a ten (10) day written notice of intent to cancel, provided said default is not cured within such period."
After making the down payment, Kende paid the first four monthly installments approximately a week to ten days after their respective due dates. According to Kende's president, the payment which was due on December 9, 1982 was not remitted until approximately December 28, 1982. Because Credit had not received the December installment by the nineteenth of that month, a notice of intent to cancel was automatically generated by computer and purportedly sent to Kende on or about December 20, 1982. However, Kende denies receipt or knowledge of said notice.
Still not in receipt of Kende's $478.93 payment for December, on January 2, 1983, Credit generated a notice of cancellation with an effective cancellation date of January 7, 1983. On January 3, 1983, this notice was forwarded to Kende, Lumbermens and the other entities involved in procuring the insurance policy. A certification of mailing from the post office confirmed that this notice was sent, and Kende's president certified that he received it on January 7, 1983.
*105 On January 4, 1983, Credit received Kende's December installment payment and, two days later, sent a notice to Lumbermens requesting that the Kende policy be reinstated. However, Lumbermens did not send Credit any reply correspondence indicating that reinstatement had been effectuated. On or about January 12, 1983, a $478.93 check for January's installment was sent by Kende to Credit and was subsequently cashed. On January 30, 1983, a fire destroyed one of Kende's trucks and $41,517 worth of merchandise in it. All of the property consumed in the fire fell within the coverage of the policy issued to Kende.
Kende reported the loss. By letter dated February 11, 1983, Lumbermens acknowledged receipt of the claim and informed Kende that it would soon be contacted by an adjuster. The adjuster for Lumbermens assessed Kende's damages, and, pursuant to the adjuster's instructions, Kende also inspected the damaged goods, incurring costs of over $2500 in the process. Although not disputing the amount of Kende's claim, Lumbermens refused to pay it. In response to Credit's inquiry on April 1, 1983 as to the status of Kende's policy, Lumbermens replied in a memorandum dated April 4, 1983 that a former employee had inadvertently reinstated the policy and that the most recent notice of cancellation would remain in effect. According to Lumbermens, it had received from other finance companies four prior notices of Kende's nonpayment of premiums, and company policy prohibited reinstatement after just two such notices. Therefore, Lumbermens refused to reinstate the policy.
Kende paid to Credit both the February and March installments under their premium financing agreement. It was not until Credit notified Kende on or about April 18, 1983 that Lumbermens had refused to reinstate the policy or pay the January 30, 1983 loss that Kende became aware that the policy was no longer in effect. On May 3, 1983, Lumbermens returned to Credit the unearned premium of $478.93.
*106 Kende thereupon instituted this suit and subsequently moved for summary judgment against both Lumbermens and Credit. Kende maintained that Credit was unable to prove that it had mailed to Kende a notice of intent to cancel. According to Kende, the only evidence concerning this issue was the deposition testimony of Ms. McCarthy, a collection manager who began working for Credit in March 1983, long after the notice of intent to cancel was purportedly sent. Ms. McCarthy had testified that Credit's records showed that the notice of intent was computer-generated on December 19, 1982 and that she presumed the notice was subsequently mailed. However, she admitted having no personal knowledge as to whether the notice was in fact ever mailed. As N.J.S.A. 17:16D-13 also requires that notice be sent to any broker or agent involved, Kende maintained that Credit's failure to get an affidavit from the broker stating that it had received notice of intent to cancel further proved that the evidence was inadequate to withstand a motion for summary judgment.
Credit's position was that it was entitled to summary judgment whether or not the proofs established that notice of intent to cancel was mailed to Kende. If the evidence showed that notice was sent, Credit argued that both it and Lumbermens would be relieved of all responsibilities to Kende. If, on the other hand, there was insufficient proof of notice, then Kende would be entitled to collect from Lumbermens under the policy. In that case, Credit alleged that its only duty would be to return to Lumbermens the $478.93 in unearned premiums which Lumbermens had remitted to Credit. Although defending its office procedures in light of the mass quantity of mailing that it does, Credit claimed that no matter how the issue of notice was resolved, Credit owed no duty to Lumbermens and should be dismissed from the suit.
Lumbermens, however, maintained that "the motion for summary judgment on all sides must be denied." According to Lumbermens, a factual issue existed concerning the mailing of notice. Lumbermens argued that a jury might conclude that *107 the statutory notice requirements were met if the broker or agent received notice or if it found that Credit's computerized mailing procedure was commercially reasonable. Although not having asserted a cross-claim against Credit, Lumbermens contended that Credit should not be dismissed from the case because its conduct had prejudiced Lumbermens. Lumbermens argued that Credit's false assertions that it had complied with the statute and thus properly cancelled Kende's policy constituted a breach of warranty, caused Lumbermens not to investigate properly the claim of loss and may have substantially prejudiced it in regard to the issue of reinsurance.
The trial court concluded that the evidence was insufficient to present a jury question of whether or not notice of cancellation had been mailed. Under the statute, actual mailing of the notification is required. The trial court found "that it would be sheer speculation on the part of the jury to attempt to show by some remote inference that [notice] might have been sent to the insured." Therefore, the trial court declared that the policy was in full force and effect and provided coverage for Kende's loss. The trial court also held that, except for the return of the unearned insurance premium which Lumbermens had sent Credit on May 3, 1983, Credit was not liable for any claims asserted by Lumbermens. Kende thereupon settled its claim against Lumbermens for $35,000 and assigned its rights against Credit to Lumbermens. Final judgment dismissing the action with prejudice against Lumbermens was entered and this appeal followed.

I.
Lumbermens contends that by failing properly to cancel Kende's policy pursuant to N.J.S.A. 17:16D-13, Credit is liable to Kende (and thus to Lumbermens as Kende's assignee) for the loss it sustained. Lumbermens argues essentially that whether Credit actually sent Kende a notice of intent to cancel is a matter within the exclusive knowledge of Kende and *108 Credit. Thus, Lumbermens continues, it was entitled to rely exclusively on Credit's notice of cancellation of the Kende policy. Because, under the premium finance agreement, Kende had given Credit power of attorney to cancel the insurance policy if Kende defaulted, Lumbermens asserts that Credit was Kende's agent, and, therefore, Credit's "mailing of the notice of cancellation to Lumbermen's [sic] in the eyes of the law [was] a communication from the insured that the policy shall be deemed cancelled as of the date stated in that notice." According to Lumbermens, the purported cancellation was not abrogated by Credit's failure to send Kende a notice of intent to cancel. Lumbermens claims that the only effect of this failure is to render Credit liable to Kende for breaching its contractual, statutory and fiduciary duties. Furthermore, Lumbermens asserts that Credit's request to reinstate the policy was just that  a request  and imposed no affirmative obligation upon Lumbermens. Thus, Lumbermens concludes that the notice of cancellation still operated to terminate the policy, thereby relieving it of any liability for the loss. We disagree and affirm.
This controversy involves the provisions of the Insurance Premium Financing Act, N.J.S.A. 17:16D-1 et seq., governing the cancellation of an insurance contract when an insured defaults in his obligations under a premium financing agreement. N.J.S.A. 17:16D-13 provides:
(a) When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is effectuated in accordance with this section.
(b) Not less than 10 days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such 10-day period. A copy of said notice shall also be sent to the insurance agent or insurance broker indicated on the premium finance agreement.
(c) After expiration of such 10-day period, the premium finance company may thereafter request in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer a notice of cancellation, and the insurance contract shall be canceled as if such notice of cancellation had been submitted by the insured himself, but without requiring the *109 return of the insurance contract or contracts. The premium finance company shall also mail a notice of cancellation to the insured at his last known address and to the insurance agent or insurance broker indicated on the premium finance agreement. The effective date of such cancellation shall not be earlier than 3 days after the date of mailing of such notice to the insured and to the insurance agent or insurance broker.
(d) All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under the provisions of this section. The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party on or before the second business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation.
Paragraph (a) of N.J.S.A. 17:16D-13 makes clear that even if a premium finance company is empowered under the terms of an agreement to cancel an insured's policy, the company cannot do so unless the cancellation is effectuated in accordance with this section. One of the prerequisites to cancellation is that a minimum of ten days' written notice of the premium finance company's intent to cancel be mailed to the insured and the agent or broker indicated on the financing agreement. N.J.S.A. 17:16D-13(b). After the expiration of the ten-day period, the premium finance company may elect to cancel the policy. To do so, the company must mail a notice of cancellation to the insurance company, the insured and the designated broker or agent. The cancellation shall be effective no earlier than three days after the date of mailing. N.J.S.A. 17:16D-13(c).
That cancellation cannot be effected without notice of intent to cancel first being mailed to the insured is well established by our case law. In Brown v. Shaw, 174 N.J. Super. 32 (App.Div. 1980), we considered whether or not an automobile liability insurance policy had been properly cancelled by a premium finance company. Directly at issue was the adequacy of a letter, sent prior to the notice of cancellation, to inform the insured of the finance company's intent to cancel. The letter stated that the finance company did not want to cancel the insured's policy but would take further steps to collect the loan *110 unless the insured forwarded a check within five days. Concluding that the public policy of this State required strict enforcement of N.J.S.A. 17:16D-13, we held that the premium finance company did not comply with the statute. In our view, the letter did not sufficiently apprise the insured of the finance company's intent to cancel and the insured's right to cure the default within ten days.
Although not addressed in Brown, the effect of noncompliance with the notice provisions was explored in Wright v. Rumble, 194 N.J. Super. 337 (App.Div. 1984). The issue there was whether defendant's automobile policy had been effectively cancelled, thus obligating the Unsatisfied Claim and Judgment Fund Board, rather than defendant's insurer, to defend in an action charging defendant with negligently operating his automobile. Delinquent in paying the September installment under a premium finance agreement, defendant was sent a letter by the finance company indicating that his insurance was subject to cancellation unless payment was remitted within ten days of that notice. The letter was sent September 14, 1978 and listed the cancellation date as September 27, 1978. However, defendant persuaded the finance company to forbear cancelling the policy and allow him until October 2, 1978 to make the September payment. Still not having received payment, on October 4, 1978, the finance company mailed to defendant and the insurance company a notice of cancellation purporting to be "effective immediately." Unaware of the extension of time which defendant had been granted, the insurance company attempted to cancel the policy on September 27, 1978 and, on October 14, 1978, mailed defendant notice to that effect. The automobile accident in question occurred on October 20, 1978.
The trial court held that the cancellation was invalid due to the insurer's notice of October 14, 1978. We reversed, holding that the notice sent by the premium finance company satisfied the statutory requirements and, therefore, effectively cancelled the policy prior to the accident. In reaching this conclusion, we explained that in order "[f]or a cancellation to be effective *111 under the statute the premium finance company must give the insured two notices." Id. at 342 (Emphasis supplied). One such notice is a notice of intent to cancel; the other a notice of cancellation. Since the premium finance company had sent both notices to defendant, on October 7, 1978, three days after the notice of cancellation was mailed, defendant's policy had been terminated.
In Wright we stated unambiguously, as does the language of N.J.S.A. 17:16D-13, that unless a legally sufficient notice of intent to cancel is sent to the insured before the notice of cancellation, a premium finance company cannot cancel the defaulting insured's policy. This settled principle of law is in direct contrast to Lumbermens' claim that effective cancellation is solely contingent upon the insurance company's receipt of a notice of cancellation. Lumbermens' interpretation of the statute and case law would render meaningless the provisions of paragraph (b) of N.J.S.A. 17:16D-13 and must therefore be rejected. See Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 521 (1984) ("construction that will render any part of a statute, inoperative, superfluous or meaningless, is to be avoided."). Also unfounded is Lumbermens' implicit argument that the purpose of N.J.S.A. 17:16D-13(b) is fulfilled as long as the insured whose policy was cancelled has a cause of action for breach of duty against the premium finance company which neglected to send the insured a notice of intent to cancel. In Wright, we made clear that the function of that notice was to warn the insured that if payment is not made by a certain date he would thereafter be powerless to prevent cancellation of the policy. Thus, notice of intent to cancel is intended to help an insured keep his policy from lapsing, not to give him recourse against a finance company once the hardships of not having coverage have already befallen him. In light of the underlying purposes of N.J.S.A. 17:16D-13, we reject Lumbermens' claim that Credit's failure to send notice of intent to cancel did not affect the validity of the cancellation notice.
*112 Lumbermens also contends that, given the agency relationship between Credit and Kende, Credit's notice of cancellation was tantamount to Kende itself cancelling the policy. A similar argument was considered and rejected by the Supreme Court of New York in Felician v. State Farm Mut. Ins. Co., 113 Misc.2d 825, 449 N.Y.S.2d 887 (Sup.Ct. 1982). The similarity of the facts and statutory provisions in Felician to those involved herein render the New York Supreme Court's decision a useful guide in resolving this case.
Felician was a declaratory judgment action to determine whether or not an automobile liability policy issued by defendant State Farm to the driver who collided with plaintiff's car was in effect at the time of the accident in question. As a premium finance agency had financed the insurance policy, the New York counterpart to N.J.S.A. 17:16D-13 was implicated in Felician. New York Banking Law, § 576 prescribed the manner in which a premium finance agency could cancel an insurance policy in the event that the insured defaulted in his payments under the financing agreement:
Subdivision 1(a) provides that: "Not less than ten days written notice shall be mailed to the insured at his last known address as shown on the records of the premium finance agency, of the intent of the premium finance agency to cancel the insurance contract unless the default is cured within such ten day period...." Subdivision 1(d) provides that: "After the notice in paragraph (a) above has expired, the premium finance agency may thereafter, in the name of the insured, cancel such insurance contract by mailing to the insurer a notice of cancellation.... A copy of the notice of cancellation shall also be mailed to the insured." [449 N.Y.S.2d at 890].
One of the issues in Felician was whether the premium finance agency had mailed to the insured a notice of intent to cancel. State Farm argued that subdivision 1(d) had "the effect of making the cancellation by the premium finance agency, a termination of the insurance policy by the insured, and therefore negat[ed] the insurer's need to prove mailing of the notice of intent to cancel." Ibid. The New York Supreme Court rejected this contention. The court noted that the preface to Banking Law, § 576 stipulated that cancellation could not be effectuated unless done in compliance with the provisions of *113 that act. Moreover, New York law was settled that strict compliance with the notice requirements was necessary. Lastly, and most significantly, the court distinguished the cases cited by State Farm for the proposition "that statutory provisions for notice have no application where cancellation is effected by the insured rather than the insurer." Ibid. (Emphasis in the original). The court explained that in those cases the brokers were acting at their clients' behest, whereas the premium finance agency in Felician was acting on its own initiative. For these reasons, the New York Supreme Court refused to equate the premium finance agency's notice of cancellation with a request by the insured to cancel his policy.
Similarly, we reject Lumbermens' argument that Credit's notice of cancellation was equivalent to Kende's having cancelled the policy. Paragraph (a) of N.J.S.A. 17:16D-13 states that in order to be effective, cancellation must be done in accordance with the provisions of that act. In Brown, we held that strict compliance, particularly with respect to the notice of intent to cancel, was required by New Jersey public policy. Furthermore, Credit's sending a notice of cancellation was motivated by self-interest and not a desire to benefit Kende. These considerations compel the conclusion that Credit should not be deemed an agent of Kende so as to excuse Credit's failure to mail a notice of intent to cancel.
We hold that Credit's failure to mail Kende a notice of intent to cancel rendered ineffective the subsequent notice of cancellation. Therefore, Kende's policy was in effect at the time of the January 30, 1983 fire and, under the terms of the policy, Lumbermens was legally liable to pay Kende for the fire loss it sustained. Consequently, the trial court properly granted summary judgment in favor of Kende with respect to its claim under the policy issued by Lumbermens and in favor of Credit with respect to Kende's claims against it.

*114 II.
Alternatively, Lumbermens seeks redress under a theory of detrimental reliance. Lumbermens claims that it is a third-party beneficiary of the statutory scheme of N.J.S.A. 17:16D-1 et seq. and of the premium financing agreement between Kende and Credit. Because Credit breached its alleged contractual and statutory duty of proper notice, Lumbermens asserts that Credit is liable to it. Lumbermens claims that its decisions to refuse payment of Kende's claim and to undertake this litigation were made in reliance upon Credit's assertion that it had properly cancelled the policy. Moreover, Lumbermens maintains that such reliance was justifiable in that "all of the facts concerning proper cancellation were singularly within the control of Credit." The detriment for which Lumbermens seeks recovery is its costs of litigation, including legal fees, and those added legal expenses Kende was forced to incur because of Credit's conduct.
Contrary to Lumbermens' assertions, the Insurance Premium Financing Act is not intended to benefit insurance carriers. The unmistakable purpose of that legislation is to protect an insured against the summary, unannounced cancellation of his policy by the acts of a premium finance company and insurance carrier. Lumbermens is not a third-party beneficiary of either the premium financing agreement involved in this case or of N.J.S.A. 17:16D-1 et seq.
Likewise, Lumbermens' claim that it justifiably relied upon Credit's position that it properly cancelled Kende's policy is without merit. The record is devoid of any affirmative statements by Credit "that it could properly document the cancellation of the insurance policy." The only evidence concerning the purported mailing of the notice of intent to cancel is the deposition testimony of Ms. McCarthy concerning Credit's business practice. Reliance upon this testimony can in no way be deemed justifiable. Such proof falls far short of establishing the fact of mailing, and there is no indication in the record *115 that Lumbermens called Credit or the broker involved to verify if, in fact, the notice of intent to cancel was sent. Thus, even if Lumbermens' refusal to pay Kende's claim and pursuit of this litigation was in reliance upon Credit's conduct or position, such reliance was not justifiable.
Furthermore, there is persuasive proof that Lumbermens' decision to cancel Kende's policy was not made in reliance upon anything said or done by Credit. The effective date of the notice of cancellation forwarded by Credit to Kende and Lumbermens was January 7, 1983. Under N.J.S.A. 17:16D-14(a), Lumbermens was required to return all unearned premiums to Credit, at the very latest, within 90 days of the cancellation date. N.J.S.A. 17:16D-14(a) provides:
Whenever a financed insurance contract is canceled, the insurer on notice of such financing shall return whatever gross unearned premiums are due under the insurance contract to the premium finance company for the account of the insured or insureds within a reasonable time, not to exceed 60 days after the effective date of cancellation, or 60 days after the completion of any payroll audit necessary to determine the amount of premium earned while the policy was in force. Such audit shall be performed within 30 days after the effective date of cancellation.
If Lumbermens had relied upon Credit's notice as having cancelled Kende's policy, by the second week in April, Lumbermens would have been obligated to remit to Credit the premiums for approximately five months. On April 4, 1983, Lumbermens sent Credit a memorandum stating that Kende's policy had been inadvertently reinstated and that the most recent notice of cancellation would remain in effect. However, Lumbermens did not remit any unearned premiums until May 3, 1983 and, then, sent only $478.93. This suggests that Lumbermens did not cancel Kende's policy on January 7, 1983 but rather chose to honor Credit's January 6, 1983 request to reinstate.
Furthermore, Lumbermens' delay in returning the unearned insurance premiums raises a serious question of estoppel. In Englishtown Auc. Sales v. Mt. Vernon Fire Ins., 112 N.J.Super 332 (App.Div. 1970), we held that the defendant insurer's retention of premiums covering a period beyond the *116 effective date of its notice of cancellation (i.e., the insurer's failure to return unearned premiums) estopped the insurer from denying coverage for an accident occurring subsequent to the purported cancellation date. In determining that the insurance carrier had waived its right of cancellation under the policy, we explained:
Clearly, the defendant could not assert a right to the premium for valid insurance, and at the same time insist that the insurance had never been effected. By claiming and maintaining such a right, with full knowledge of all material circumstances, it unequivocally affirmed the validity of the insurance for the period covered by the premium, and definitively waived every objection on which its validity could be denied. [Id. at 337 (quoting New Jersey Rubber Co. v. Commercial Union Assur. Co., 64 N.J.L. 580, 586 (E. & A. 1900)].
See also Ciccone v. The Colonial Life Ins. Co., 110 N.J.L. 276, 279 (E. & A. 1933) ("By the acceptance of the premium, defendant waived the forfeiture. The policy was thereby revived, and continued to be a valid and outstanding obligation against the insurer.") Thus, we concluded in Englishtown that the cancellation notice had effectively been waived by the insurer.
Lumbermens' conduct warrants reaching a similar conclusion in this case. Although cancellation of Kende's policy on January 7, 1983 would have obligated Lumbermens to return five months of unearned premiums to Credit by April 1983, Lumbermens delayed making payment until May 3, 1983 and then remitted unearned premiums for just one month. For having retained premiums for coverage far beyond the cancellation date of January 7, 1983 and the date of the loss, January 30, 1983, Lumbermens should now be estopped from denying that the policy was in effect at the time of the fire. Since Lumbermens is estopped from claiming cancellation, its argument of detrimental reliance, predicated upon its having cancelled Kende's policy, must also fail.
Our decision that Credit should not be held liable to Lumbermens is supported by Home Mut. Ins. Co. v. Broadway Bank and Trust Co., 53 N.Y.2d 568, 444 N.Y.S.2d 436, 428 N.E.2d 842 (Ct.App. 1981). Home was an action by an insurance company against a bank for failing to comply with the notice *117 provisions of Banking Law, § 576. Because the bank, which had financed a policy issued by the insurance company, had not sent the insured proper notice of cancellation, the subsequently attempted cancellation was deemed void. The insurance company was therefore forced to defend and eventually settle for $25,000 an automobile accident suit brought against its insured. The insurance company then sought to recover from the bank the amount of the settlement and the legal expenses incurred in defending the suit. The theory asserted was that:
the bank acted negligently in attempting to cancel the policy previously issued by the insurer and misrepresented to the insurer that it had been effectively canceled and that the damages now sought to be recovered were incurred by reason of the bank's negligence. [444 N.Y.S.2d at 438, 428 N.E.2d at 843-44.].
The New York Court of Appeals considered whether there was any basis for imposing upon the bank "a duty not to represent to the insurer that a proper notice of cancellation of one of its liability policies had been sent to the insured when in fact it had not." Ibid. The Court reasoned that, although the bank alone had power to cancel the policy upon the insured's default, the bank had no responsibility to the insurer to effect cancellation; "the choice whether to do so was with the bank and the carrier had no right either to demand or expect cancellation of the obligation it had assumed when it entered into the contract of insurance." Id. at 439, 428 N.E. at 845. The Home court stated that in choosing to cancel the policy, the bank was acting solely in its own interest, not for purposes of benefiting the carrier. Therefore, the good samaritan rule, which requires one who gratuitously undertakes a task for the benefit of another to perform the voluntary activity with due care, was inapplicable and could not serve to impose upon the bank a duty to the insurer.
Furthermore, the Home court held that considerations of public policy militated against imposing a duty on the bank. To create such a duty and hold the bank liable for a breach thereof would subject premium finance companies to potentially large losses  over $25,000 in that case  on loans which generate *118 modest income, there $20.94. The inevitable result would be a reluctance on the part of lenders to engage in insurance premium financing and hence a frustration of the legislative intent behind the statutes authorizing such financing. Thus, the Home court held that the insurance company failed to establish the existence of a duty the breach of which caused the loss it sustained in discharging its obligations under the policy.
Also instructive is the Home court's discussion of the insurance company's claim of detrimental reliance. The Court explained that, in an action for negligent misrepresentation, there must be proof of action or inaction induced by the alleged misrepresentation. There, the only action taken by the insurance company in reliance upon the bank's assertion that the policy had been properly cancelled was the return of an unearned insurance premium. Indeed, there was nothing the insurance company could have done to relieve itself of its obligations under the insurance contract had the bank not "erroneously led it to believe that the policy had been canceled." Id. at 441, 428 N.E. at 846. In concluding, the Home court remarked that the insurance company had:
no complaint because defendant bank, in ineffectively protecting itself, failed to exonerate it [the insurance carrier] from that contractual obligation. That it lost a windfall it might have had had the bank effectively canceled the policy before the accident occurred is no ground for shifting to the bank the economic obligation which stemmed from its own insurance agreement. [Ibid.]
The rationale of Home is equally compelling and applicable here. Neither Credit's power to effect cancellation under N.J.S.A. 17:16D-13 nor the good samaritan rule is a valid basis for imposing upon Credit the duty urged by Lumbermens. Additionally, the risk of drying up sources of insurance premium financing cautions against holding lenders accountable to insurers for failing to comply with the notice provisions of N.J.S.A. 17:16D-13. And, for essentially the reasons expressed in Home, Lumbermens' claim of detrimental reliance is unpersuasive and must fail.
*119 Thus, we hold that Credit is not liable to Lumbermens on either a theory of breach of duty or detrimental reliance.
Accordingly, the judgment under review is affirmed.