**UNIVERSAL PREMIUM ACCEPTANCE CORPORATION, Appellant,**

v.

**GUARANTY NATIONAL INSURANCE COMPANY, Appellee.**

No. 97–CA–000695–MR.

Court of Appeals of Kentucky.

May 29, 1998.

Discretionary Review Denied Jan. 13, 1999.

William H. McCann, Penny R. Warren, Wyatt, Tarrant & Combs, Lexington, for Appellant.

Stefan R. Hughes, John David Cole, Cole, Moore & Baker, Bowling Green, for Appellee.

Before GUDGEL, C.J., and COMBS and HUDDLESTON, JJ.

## OPINION

HUDDLESTON, Judge.

The issue presented on this appeal is whether Universal Premium Acceptance Corporation (UPAC) is liable to Guaranty National Insurance Company (GNIC) for failing to use a form approved by the Insurance Commissioner when cancelling a truck liability insurance policy issued by GNIC to Michael Johnson.

UPAC is an insurance premium finance company organized under Ky.Rev.Stat. (KRS) 304.30–020(1) and engaged in the business of providing financing for the payment of insurance premiums for those who desire to pay such premiums in installments. Johnson entered into an arrangement with UPAC whereby UPAC paid his motor vehicle liability insurance policy premium in full to GNIC. In return, Johnson promised to make installment payments over time sufficient to retire the debt and interest, and he granted UPAC a limited power of attorney authorizing the finance company to cancel the policy and recoup the unearned portion of the premium if he failed to pay any installment when due. After UPAC paid the $1,679.00 premium on Johnson's policy in full to GNIC, Johnson defaulted[1] on his obligation to UPAC. UPAC notified GNIC to cancel Johnson's policy, and the carrier did so.[2]

After GNIC notified Johnson that his policy had been cancelled and after Johnson had obtained replacement insurance with another company, Johnson was involved in a collision that left Glenda Akers dead. Akers' estate recovered the policy limits of $350,000.00 from Johnson's new carrier, Stratford Insurance Company, and then asserted a claim against GNIC. Shortly before a scheduled trial, GNIC, which had vigorously and consistently denied liability, settled with Akers' estate for $160,000.00.[3]

Upon settling with Akers' estate, GNIC sued UPAC claiming that the premium finance company should be required to indemnify it for the amount paid to settle the claim asserted by Akers' estate. The circuit court granted GNIC's motion for summary judgment[4] and ordered UPAC to reimburse GNIC for the full amount paid in settlement to Akers' estate. The basis for the court's ruling was its earlier holding that the premium finance agreement between Johnson and

---

1. Michael Johnson apparently became disenchanted with Don Taylor of the Jenkins Agency, through which he had purchased the GNIC policy, after a dispute arose over coverage for damage his truck sustained in an accident unrelated to the accident that precipitated this action. More than three weeks prior to the accident that took the life of Glenda Akers, Johnson sued Taylor in small claims court, notified Taylor that he was cancelling his GNIC policy, ceased making installment payments to UPAC, and purchased a replacement policy.

2. An insurance premium finance company may cancel an insurance policy by complying with the provisions of Ky.Rev.Stat. (KRS) 304.30–110 and regulations adopted pursuant to KRS 304.30–070 by the Commissioner of Insurance.

3. GNIC's policy limits were $500,000.00.

4. "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996) (citing Ky. R. Civ. Proc. (CR) 56.03). "There is no requirement that the appellate court defer to the trial court since factual findings are not at issue." *Id.* (citing *Goldsmith v. Allied Building Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992)).

UPAC was "void" because UPAC failed to get approval from the Insurance Commissioner for the contract form it used.[5] Thus, the court determined, UPAC's cancellation of Johnson's policy while purporting to act as his attorney in fact according to the "power of attorney" clause in the void agreement was "ineffective."

According to the court, GNIC's liability for damages incurred by the Akers' estate is "derivative from the failure of UPAC to use approved cancellation forms." Thus, the court held, primary liability for GNIC's payment of the Akers' estate's damages lies with UPAC. This is so, the court said, because "UPAC is estopped from denying third party liability to [GNIC], for UPAC's use of defective cancellation forms and subsequent improper cancellation of the [GNIC] policy with Michael Johnson." The court found that UPAC was estopped to deny liability to GNIC based upon its negligent misrepresentations to GNIC. "UPAC knew or should have known that [GNIC] was relying on the cancellation notice provided. GNIC justifiably relied upon the representations of UPAC that it had properly cancelled the policy in question."[6]

There appear to be no Kentucky cases construing the Insurance Premium Finance Companies Act despite the fact that the Act has been in effect since 1970. GNIC relies on cases from other jurisdictions which are not apposite because they address the duty owed by an insurance premium finance company to the insured/borrower with which it contracted, not its duty, if any, to the insurance carrier that undertook to provide liability coverage. There are, however, two cases from sister jurisdictions that are in point. They are *Home Mutual Ins. Co. v. Broadway Bank and Trust Co.*, 53 N.Y.2d 568, 428 N.E.2d 842, 444 N.Y.S.2d 436 (1981), aff'g 76

A.D.2d 24, 429 N.Y.S.2d 948 (1980); and *Carroll v. State Farm Mut. Ins. Co.*, 419 So.2d 57 (La.App.1982). The two cases[7] follow different roads to the same destination.

In *Carroll*, a notice of cancellation issued by a premium finance company was invalid because it was not mailed 10 days prior to the effective date of the cancellation. After State Farm was held liable under its policy to an individual injured as a result of its insured's [Carroll's] negligence, it brought a third-party claim against the premium finance company seeking indemnity upon its assertion that it relied to its detriment on the improper notice of cancellation. The Louisiana Court of Appeals held that the trial court erred when it granted State Farm indemnity over and against the premium finance company for the sum which the injured party recovered from it. In doing so, the Court said:

> State Farm issued the policy and was paid the full amount of the annual premium. State Farm's position after the purported cancellation was no different than it was before Intech's [the premium finance company's] action; it remained insurer of Carroll's automobile. It was not entitled to rely on the notice of cancellation given by Intech, which on its face did not comply with the law. The only detriment or damage to State Farm which occurred because of its reliance on the purported cancellation is that it refunded to Intech the unearned portion of the annual premium . . . and the unearned portion of the producer's commission. . . .

419 So.2d at 59.

In *Home Mutual*, a case whose facts are strikingly similar to those of the case under consideration, New York's highest court held that a premium finance agency is under no duty to the insurer, under section 576 of the New York Banking Law,[8] with respect to

---

**5.** KRS 304.30–080 specifies the form that the premium finance agreement must take.

**6.** It is not clear from the record why the cancellation notice was defective except that it was apparently printed in smaller than eight-point type. KRS 304.30–080(1)(a) requires that premium finance agreements be in at least eight-point type, but there is no similar requirement for cancellation notices.

**7.** *Home Mutual* and *Carroll* are the subject of an annotation by Wanda Ellen Wakefield entitled *Liability of premium finance agency to insurer for consequences of ineffectual cancellation of policy*, 26 A.L.R.4th 346 (1983).

**8.** Section 576 of the New York Banking Law, like KRS 304.30–110, sets out the procedures for accomplishing cancellation—including, in particular, 10 days' prior notice to the insured.

cancellation of an automobile insurance policy after default by the insured in payment to the agency of a premium installment, nor does its inaccurate representation to the insurer that the policy has been properly cancelled impose on it any liability to the insurer for moneys paid in settlement of a policy claim arising out of an accident occurring after the date of the misrepresentation. 53 N.Y.2d at 571, 428 N.E.2d at 843, 444 N.Y.S.2d at 437.[9]

The New York court went on to say that the bank (the insurance premium finance agency) was not obligated by the statute [nor by contract] to cancel the insured's policy when she defaulted on her payments to the bank.

> [T]he choice whether to do so was with the bank and the carrier had no right either to demand or expect cancellation of the obligation it had assumed when it entered into the contract of insurance. The statutory authorization for cancellation by the financing agency was for the benefit of the agency, which could thereby recoup a part of the premium it had advanced to the insurer. When the bank chose to exercise that authority it was acting solely for its own interest and not for the purpose of extending any advantage to the carrier; indeed, cancellation of a policy, the premium of which has been fully paid to the insurer, would normally be regarded at that time as contrary to the interests of the carrier which presumably was interested in writing insurance. It was only the subsequent improvidential loss under the policy which prompted the insurer to seek to shift the economic burden of the risk it had been paid to underwrite.

53 N.Y.2d at 574, 428 N.E.2d at 845, 444 N.Y.S.2d at 439.

GNIC relies, as did the circuit court on *Universal Fire & Cas. Ins. Co. v. Jabin*, 16 F.3d 1465 (7th Cir.1994), for the proposition that a premium finance company owes a duty to the insurance company to properly notify the insured of a policy's cancellation. We believe this reliance is misplaced. In *Jabin*,

the insured, Jabin, denied ever receiving notice that the premium finance company was canceling the policy, although the insurer received the notice and canceled the policy. Subsequently, a claim was made by Jabin and denied by the insurance carrier. The Court concluded that the insurer is not responsible for the negligence of a premium finance company. *Id.* at 1649. This case does not, however, stand for the proposition that an insurance premium finance company owes any duty to the insurer.

We agree with the contrary position of the Appellate Division of the New Jersey Superior Court that new Jersey's Insurance Premium Financing Act, like Kentucky's Insurance Premium Finance Companies' Act, "is not intended to benefit insurance carriers. The unmistakable purpose of that legislation is to protect an insured against the summary, unannounced cancellation of his policy by the acts of a premium finance company and insurance carrier." *Kende Leasing Corp. v. A.I. Credit Corp.*, 217 N.J.Super. 101, 112, 524 A.2d 1306, 1313 (1987), cert. den. 108 N.J. 664, 532 A.2d 242 (1987).

In sum, we hold that UPAC owed no duty to GNIC to cancel the policy GNIC had issued to Johnson and for which it had been paid in full by UPAC. Accordingly, the judgment is vacated and this case is remanded to Floyd Circuit Court with directions to grant summary judgment dismissing GNIC's claim against UPAC.

All concur.

---

**9.** *Cf. Basic Image, Inc. v. Transamerica Ins. Finance Corp.*, 241 A.D.2d 424, 660 N.Y.S.2d 433 (1997).