[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT
ISSUE
Whether summary judgment should be granted on counts five, six and seven of the plaintiff's complaint on the ground that an insurance finance company has no duty to the plaintiff arising out of the wrongful cancellation of the plaintiff's insurance policy. The defendant's motion for summary judgment should be granted, because the defendant, as a matter of law, is not liable for the wrongful cancellation of the plaintiff's insurance policy.
 FACTS
The plaintiff, Precision Mechanical Services, Inc., filed an eight-count amended complaint on July 30, 2002, alleging in counts five, six and seven[1] that on May 23, 1996, the defendant, AFCO Credit Corporation (AFCO), an insurance premium finance company, wrongfully canceled the plaintiff's general liability insurance policy and failed to inform it of the cancellation. The plaintiff alleges that on August 9, 1996, while one its employees was performing repair services at a unit of a condominium complex, a fire occurred that caused extensive damage to the complex. As a result of the fire, numerous claims were filed against the plaintiff. Because the defendant had canceled the policy, however, the plaintiff's insurer refused to indemnify or defend the plaintiff for these claims.
In count five, which sounds in breach of contract, the plaintiff alleges that it had an agreement with the defendant to provide financing for the policy that it held with its insurer. The plaintiff alleges that by canceling the financed insurance policy, the defendant breached the agreement in a number of ways, including the failure "to comply with the Connecticut General Statutes in terms of notifying the plaintiff that said policy had been canceled." CT Page 4344
In count six, which sounds in negligence, the plaintiff alleges that the defendant canceled the policy under the authority of a commercial finance agreement that the defendant knew or should have known had been executed with the forged signature of the plaintiff's president.[2] The plaintiff alleges that the defendant knew or should have known, at the time of the cancellation, that it was canceling the plaintiff's policy without having the requisite legal authority to do so.
In count seven, the plaintiff alleges that the course of conduct engaged in by the defendant violates provisions of the Connecticut Unfair Insurance Practices Act ("CUIPA"), General Statutes § 38a-815 et. seq., and the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-110a et. seq.
On September 12, 2002, the defendant filed a motion for summary judgment on counts five, six and seven on the ground that because the defendant is not an insurance carrier, broker or agent, it owed the plaintiff no duty when it canceled the plaintiff's policy, and that the defendant is therefore entitled to summary judgment as a matter of law. In accordance with Practice Book § 11-10, the defendant filed memoranda in support of its motion, and the plaintiff timely filed a memorandum of law in opposition. In accordance with Practice Book §17-45, the parties properly attached affidavits and other supporting documents to these memoranda. At the court's request, the defendants T.J. Pfund Associates and Marianne Pfund d/b/a/ Pfund Associates filed additional memoranda in opposition to this motion.
 DISCUSSION
A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "Summary judgment in favor of the defendant is properly granted if the defendant in its motion raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Internal quotation marks omitted.) Serrano v. Burns, 248 Conn. 419,424, 727 A.2d 1276 (1999). Summary judgment may be used to contest the legal sufficiency of a complaint. Boucher Agency, Inc. v. Zimmer,160 Conn. 404, 409, 279 A.2d 540 (1971). "The issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law." Soares v. George A. TomassoConstruction Corp., 66 Conn. App. 466, 469 n. 2, 784 A.2d 1041 (2001).
The defendant, who concedes "for purposes of the motion the accuracy of the facts alleged in the plaintiff's complaint — namely, that AFCO CT Page 4345 wrongfully canceled the Policy" — moves for summary judgment on the ground that, as a matter of law, AFCO has no liability to the plaintiff other than to return the premiums it received as a result of the wrongful cancellation. In support of its motion for summary judgment, the defendant points to General Statutes § 38a-170, subsections (a) and (e).[3] Subsection (a) governs the cancellation of an insurance company contract by an insurance premium finance company acting under a power of attorney to cancel contained in the finance agreement. Subsection (e) provides that upon cancellation, the issuer shall return gross valued premiums to the premium financing company for credit to the insured's account.
The defendant argues that because no Connecticut court has specifically addressed the issue of the scope of liability of a premium finance company to an insured claiming wrongful cancellation of an insurance policy, this court should consider and follow the reasoning of a number of decisions from other jurisdictions that have addressed this issue. In his memorandum of law, the defendant cites a number of cases from New Jersey and New York, which the defendant argues "have unequivocally held that a premium finance company holds no duty to an insured, and therefore has no liability to an insured for a wrongfully canceled policy other than to return the premiums received as a result of the wrongful cancellation." The defendant urges this court to adopt the reasoning of those cases that the failure of a premium finance company to follow statutory prescriptions regarding notice of cancellation, prescriptions similar to those found in Connecticut's General Statutes § 13a-170, renders any purported cancellation a nullity under the law and gives the insured recourse against the insurer under the policy itself.
The plaintiff argues in its memorandum of law in opposition to the defendant's motion for summary judgment that the defendant owes a duty of care to the plaintiff and the breach of that duty, specifically, the wrongful cancellation of an insured's insurance policy, imposes liability upon the premium finance company. In support of that argument the plaintiff posits that the power of attorney contained in the premium finance agreement with the defendant created an agency relationship that placed the defendant in a fiduciary relationship with the defendant. The plaintiff argues that the defendant "violated § 38a-170 and breached its contract with Precision Mechanical when it failed to comply with the notice provisions of both the statute and the Commercial Premium Finance Agreement." The plaintiff further argues that because the defendant's wrongful cancellation of the plaintiff's general liability policy amounts to gross negligence and wilful misconduct, the defendant's liability is not limited to the return of refunded premiums, but also includes liability for the consequential damages resulting from the cancellation. CT Page 4346
The plaintiff, who also acknowledges the lack of controlling law in Connecticut on the issue of the liability of a premium finance company for the wrongful termination of an insurance policy, urges this court to look for instruction to the decisions of courts in Vermont and Illinois interpreting their states' counterparts to § 38a-170. Those courts infer in their statutes, which are nearly identical to § 38a-170, a private right of action in favor of an insured against a premium finance company that fails to comply with statutory notice requirements for cancellation of a policy.
As both parties have indicated, there is no Connecticut case law that directly addresses the legal issue before this court. The defendant has conceded for the purpose of deciding its motion for summary judgment that there is no genuine issue of material fact regarding the cancellation of the plaintiff's general liability policy. The defendant concedes that the cancellation, whether under the contract or statutory requirements, was wrongful. The remaining question, therefore, is a legal question: Is the defendant liable to the plaintiff for the losses the plaintiff suffered as a result of this wrongful cancellation?
The parties have drawn support for their respective positions from the few Connecticut decisions that do involve some interpretation of §38a-170, although not the sections of that statute relevant to the issue now before the court. For example, the plaintiff argues in its memorandum of law that the court in Colagoivanni v. Premium Financing Specialists,Inc., judicial district of New Haven at New Haven, Docket No. CV 95 0370642 (July 22, 1996, Corradino, J.), "purports that a premium finance company, as opposed to an insurance company, should be responsible for its own misconduct." The plaintiff bases that conclusion on the following language from Colagoivanni: "The power of attorney given to [a premium financing company] to request that the policy be canceled is a mechanism created by finance companies and recognized by statute to protect finance companies against insureds who do not meet their financial obligations to finance companies to keep current with loan installments to finance premiums . . . Insurers and their agents cannot rationally have imposed on them the obligation to police the financial relationships between finance companies and insureds nor should they be held responsible for errors or mistakes made by Premium Financing companies concerning requests for cancellation by those companies." Id.
The court in Colagoivanni, however, was not faced with the issue of the liability of a premium finance company that wrongfully cancels an insured's insurance policy. The issue in Colagoivanni was whether an insurance company that had canceled a policy pursuant to a notice of CT Page 4347 cancellation from a premium financing company had a duty to notify the insured of the cancellation of the policy. The court stated that "[g]iven these circumstances there is no reason to impose a duty of notice of cancellation on agents of the insurer in addition to the notice of cancellation requirements already imposed on the Premium Financing Companies when such companies initiate cancellation, § 38a-170 (b)."Id. The language in Colagoivanni relied upon by the plaintiff in support of its argument that the defendant is liable to him for the wrongful cancellation of the policy is dicta. The plaintiff's argument is further undercut by the following language in Colagoivanni: "As discussed, the statute [§ 38a-170] provides that notice by the Premium Finance company to the insured is a prerequisite of a valid cancellation." (Emphasis added.) Id.
Similarly, in Jefferson v. New Haven County Ins. Agency, Inc., judicial district of New Haven at New Haven, Docket No. 309714 (January 15, 1993, Thompson, J.), the issue before the court was whether summary judgment should enter in favor of an insurance company who had failed, interalia, to issue a notice of cancellation to either the insured or the premium finance company with which the insured had signed a contract for the payment of premiums and failed to ascertain or ensure that the premium finance company had notified the plaintiff of the cancellation of the policy. The plaintiff in Jefferson had argued in opposition to the insurance company's motion for summary judgment that the insurance company was statutorily and contractually obligated to send notice of the cancellation to the insured. In granting summary judgment for the insurance company, the court held that the applicable statute in a situation where the insurance company received a notice of cancellation from an insurance premium financing company holding a power of attorney from the insured to request cancellation was General Statutes §38a-170, not §§ 38a-307 and 38a-308. The court noted that § 38a-170
(c) requires that notice of cancellation be sent to the insured by the premium finance company and that the notice requirements relative to the insurer, as set forth in § 38a-170 (d),[4] did not require the insurance company to notify the insured.
Jefferson, like Colagoivanni does not address the issue of the liability of a premium finance company that fails to meet statutory or contractual requirements to give notice to the insured when the power of attorney contained in a premium financing agreement is exercised to cancel the insured's policy. Nonetheless, the defendant argues in its memorandum of law that "[a] reading of these . . . cases reveals that Connecticut courts have universally interpreted the purpose behind Section 38a-170 as providing protection to the interests of premium finance companies . . . According[ly], these cases are consistent with CT Page 4348 other jurisdiction's findings that like statutes insulate [a] premium finance company from liability to an insured based on a claim of wrongful cancellation of a policy."
The sole appellate court case dealing with § 38a-170 is RelianceIns. Co. v. Reider, 54 Conn. App. 77, 730 A.2d 1229 (1999). This case, however, involved the interpretation of subsection (d) of § 38a-170, specifically, what is the result of an insurer's failure to provide notice of cancellation to those parties the insurer is charged with notifying under the statute. The court in Reliance noted that "§ 38a-170 (a) provides that insurance contracts listed in a premium finance agreement that grants a power of attorney to the finance company 'shall not be canceled' by the finance company `unless such cancellation is effectuated in accordance with the provisions of this section.'" (Emphasis in original.) Id., 85. The court therefore held that because the insurance company failed to file timely notice of cancellation with those agencies it was required to notice under § 38a-170 (d), the cancellation permitted under § 38a-170 (a) and (d) was not effective and the plaintiff's loss was covered under the policy. The defendant, who recognizes that Reliance interprets subsection (d) of § 38a-170, which is not in issue in the present case, nonetheless argues that "the case clearly stands for the indisputable proposition that failure to strictly abide by the statutory notice requirements contained in §38a-170 renders any cancellation of a policy ineffective."
The defendants T.J. Pfund Associates, Inc. and Marianne Pfund d/b/a/ Pfund Associates, Inc, who at the court's request filed memoranda of law in opposition to the defendant AFCO's motion for summary judgment, argue that the defendant AFCO's reading of Reliance is over broad because the subsection in issue in that case was 38a-170 (d).
Two things are clear to this court. First, the determination of the defendant's motion for summary judgment turns on a question of law — what is the liability, if any, of a premium finance company that wrongfully cancels an insurance policy? Second, there is no Connecticut case law that directly addresses this issue and the related case law that does exist is not particularly instructive as to how this question of law should be answered. A number of jurisdictions, however, have examined the issue now before this court, and it is worth noting that the statutes relevant to this question are nearly identical in all those jurisdictions.
Unger v. AFCO Credit Corporation, United States District Court, Docket No. 00-6303 (D.N.J. December 26, 2001) provides a useful starting point for the examination of how our sister states have resolved the issue now CT Page 4349 before this court. Unger is useful for a number of reasons. The defendant and the insurance company in Unger are the same as those in the present case, as well as the controlling issue, the arguments made by each party, the language of the controlling state statutes and the contract language of the premium financing agreements.
The plaintiff in Unger, like the plaintiff in the present case asserted claims in breach of contract and negligence against AFCO for the wrongful termination of an insurance policy that resulted in the refusal by Scottsdale Insurance Company to indemnify Unger for a fire loss. InUnger, the federal district court noted that it would "consider decisions of the New Jersey Supreme Court, the Appellate Division of the New Jersey Superior Court, federal courts applying New Jersey law, and analogous decisions applying the law of other states in predicting how the New Jersey Supreme Court would decide the matter in question." Id., 10 n. 5. The Unger court relied heavily on the decision of the Appellate Division of the New Jersey Superior Court in Kende Leasing Corporation v. A.I.Credit Corp., 217 N.J. Super. 101, 524 A.2d 1306 (App.Div.), cert. denied, 108 N.J. 664, 532 A.2d 242 (1987), in holding that, under the circumstances of the case, Unger had failed to state any claim against AFCO entitling her to relief. The court undertook a consideration of public policy, the law of other states and the existence of an administrative scheme under the New Jersey Insurance Premium Finance Company Act,[5] all of which the Unger court found did not significantly detract from the holding in Kende, but at least, in part, provided additional support for the conclusion reached in Kende.
In Kende the New Jersey Appellate Division held "that [a premium finance company's] failure to mail [the insured] a notice of intent to cancel rendered ineffective the subsequent notice of cancellation. Therefore, [the insured's] policy was in effect at the time of the [insured's loss] and, under the terms of the policy [the insurance company] was legally liable to pay [the insured] for the fire loss it sustained." Id., 113. The court in Unger notes that the Kende court's holding was based on New Jersey case law interpreting statutory notice requirements and the language of the statute itself. Unger v. AFCO CreditCorp., supra, 17. The statute in issue was N.J.Stat.Ann. §17:16D-13, which is nearly identical to Connecticut's General Statutes § 38a-170. Specifically, the Unger and Kende courts were addressing subsection (a), which, in essence, states that when a premium finance company acting under a power of attorney cancels a contract or contracts, "the insurance contract or contracts shall not be canceled by the premium finance company unless such cancellation is effectuated in accordance with the provisions of this section." CT Page 4350
The court in Unger also reviewed public policy considerations undertaken in Kende. The Appellate Division in Kende "specifically rejected the insurer's implicit argument that the purpose of the statutory notice requirement is satisfied even if the insurance policy is considered canceled so long as the insured possesses a claim for breach of duty against the premium finance company for its failure to comply with such a requirement."[6] Id., 17 The Unger court considered theKende court's statement that "`[n]otice of intent to cancel is intended to help an insured keep his policy from lapsing, not to give him recourse against a finance company once the hardships of not having coverage have already befallen him'" to say, in other words, that "the purpose of the Statutory Policy Provision is promoted, not by permitting a cause of action against a premium finance company, but by treating a failure of the finance company to follow the Statutory Notice Provision as vitiating any purported cancellation of the insurance policy, thereby allowing the insured to pursue a cause of action against the insurer under such a policy." Id., 17-18
The court in Unger further noted that it was not necessary to hold a premium finance company liable to protect an insured and ensure strict compliance with the New Jersey act, that such considerations would actually be honored by treating any cancellation in which the statutory notice requirements had been violated as a nullity and permitting the insured to recover from the insurer under the insurance policy.
The Unger court also considered the case law of New York state on the policy concern that a substantial and unjustified burden would be placed on a premium finance company by making it liable under the insurance policy to an insured. The New York courts cited by Unger have taken the same approach as that of the court in Kende and held that "if the insured could show an erroneous notice of cancellation, `the cancellation will be treated as a nullity' and the insured will have recourse against the insurer under the policy itself." Id., 22, quoting Best Image, Inc. v.Transamerica Ins. Finance Corp., 660 N.Y.S.2d 433 (App.Div. 1977). Unger
notes, "[e]ven more significantly, the Basic Image court justifies its decision by observing that the premium finance agency does not buy the risk." (Internal quotation marks omitted.) Unger v. AFCO Credit Corp.supra, 22-23. Unger highlights further public policy arguments made by the New York courts and adopted in Kende which the Unger court contends provides even further support for the conclusion reached in Kende: "[BasicImage] noted that the Home Mutual [Ins. Co. v. Broadway Bank, 53 N.Y.2d 568
(1981)] court found that public policy considerations disfavor holding a premium finance company liable to an insurer for the policy amount because, given such extensive liability, qualifying banks and lending units might well decline to act as premium financing agencies." (Internal CT Page 4351 quotation marks omitted.) Unger, 23.
The Unger court further addresses this policy concern in stating: "[T]he objective of ensuring that the risk of significant liability does not diminish the availability of premium financing applies in this context. Even if the Statutory Notice Provision is to be strictly construed, such consideration is not promoted if premium financing is not available." Id., 24.
Following its review of New Jersey case law and that of the other jurisdictions relied upon by the New Jersey courts, especially Kende, theUnger court takes up consideration of the law in those jurisdictions that have expressly rejected Kende and its approach, notwithstanding statutory provisions nearly identical to those of New Jersey. Unger examines two cases, Carr v. Peerless Ins. Co., 724 A.2d 454 (VT 1998), a case relied upon by the plaintiff in the present case in support of its opposition to the defendant's motion, and Universal Fire Casualty Ins. Co. v.Jabin, 16 F.3d 1465 (7th Cir. 1994). Unger notes that in Carr, "[t]he Vermont Supreme Court . . . held that an insured can bring an action against a premium finance company for failing to comply with statutory cancellation procedures either based on a private right of action arising out of the statute itself or a theory of breach of contract and fiduciary relationships . . . The court specifically imposed on the premium finance company potential liability for all the benefits under the policy . . . Similarly, the Seventh Circuit in [Jabin] held that the Illinois statute, equivalent to the Insurance Premium Finance Company Act, confers upon the insured a cause of action against the premium finance company for any cancellation it effectuates in breach of the [statute's] notice requirements." (Citations omitted; internal quotation marks omitted.)Unger v. AFCO Credit Corp., supra, 26.
In Carr, the Vermont Supreme Court stated that it did not find controlling the policy concerns relied upon in Kende and was more persuaded by the court's analysis in Jabin, which emphasized that "the statutory language restricting cancellation without compliance with the statute specifically restricts cancellation by the premium finance company" (Internal quotation marks omitted.) Carr v. Peerless Ins. Co.,supra, 724 A.2d 472. The Carr court felt that in construing the Vermont statute according to its ordinary meaning, as it must, there was nothing in the statutory scheme to suggest that the insurer is responsible for the improper actions of the finance company and that "[w]hen the Legislature has deemed it appropriate to regulate or limit an insurance company's ability to cancel a policy it has issued, the Legislature has enacted statutes that plainly say so." Id. Nonetheless, the Carr court concluded that it should infer the existence of a private right of action CT Page 4352 in favor of the insured against the premium finance company. Id.
The Unger court found that "[t]he persuasiveness of these opposing cases is significantly reduced by their simultaneous rejection of any liability on the part of the insurer to the insured. Both courts concluded that, even if the premium finance company fails to provide the required notices, the insurer is not liable to the insured because any cancellation of the insurance policy still remains valid and effective . . . These courts explicitly criticized Kende's finding that such an insurer remains potentially liable under the policy." (Citations omitted.) Unger v. AFCO Credit Corp., supra, 27.
The court's final consideration in Unger was the overall administrative scheme established by the New Jersey Premium Finance Company Act. Noting that the most serious argument that could be made against the Kende
approach to premium finance company liability is that the entity responsible for the improper and ineffective cancellation seemingly does not face any negative consequences for its conduct, the Unger court points out how the act itself provides an administrative scheme to enforce its provisions. Connecticut's statutes contain the same administrative scheme discussed by the court in Unger. Citing the relevant New Jersey statutes, the court notes that the act requires a person engaged in financing insurance premiums to obtain a license from the commissioner of banking with fines imposed if the person engages in such business without a license. Id., 28. This provision is found in Connecticut General Statutes § 38a-162. The New Jersey act also provides that the commissioner "may revoke or suspend the license of a premium finance company when and if after investigation the commissioner finds that . . . [s]uch company has violated any of the provisions of [the New Jersey Act]." Id. Connecticut's counterpart to this section is General Statutes § 38a-164 (a)(4). New Jersey's act also authorizes the imposition of financial penalties in lieu of license suspension or revocation; id., 29; as do the Connecticut statutes at § 38a-164 (b). Unger thus held that "[g]iven the existence of such administrative sanctions, a failure of a premium finance company to abide by the requirements of the Statutory Notice Provision does subject it to possible sanction, thus diminishing the need [to] hold such an entity liable in the context of private civil litigation." Id., 29-30.
On facts identical to those in the present case, the Unger court "having fully considered the admittedly complex issues and law regarding the potential liability of a premium finance company to an insured, follows the Kende approach and finds that the insured . . . has no cognizable claim against the premium finance company arising out of its alleged failure to provide sufficient notices." Id., 30. CT Page 4353
This court, having undertaken the same considerations as those delineated in the Unger decision reaches the same conclusion. Not only are the facts of this case and Unger identical, but also the language of the relevant statutes and the premium financing agreements. This court finds the reasoning of the Unger and Kende courts to be more persuasive than that of the courts in Vermont and Illinois. Although the public policy concerns addressed in Unger are not controlling, this court concludes that those concerns serve as a sound basis for this court's decision that a premium finance company that wrongfully cancels an insured's policy is not liable to the insured. Furthermore, this court's resolution of this issue does not conflict with, but can be supported by, what scant related case law exists in Connecticut on this issue. Finally, there is nothing in the legislative history of the Connecticut statutes regulating premium financing companies to indicate that this court's decision is contrary legislative intent. Debate in the legislature on House Bill 6994, which is codified at §§ 38a-160
through 38a-170, indicates only that the purpose of the bill was to bring regulation to a previously unregulated field. "This bill sponsored by the Connecticut Insurance Department brings regulation into a field that has been unregulated for years in the state of Connecticut. The bill is an adoption of the model bill enforced in Washington, D.C. and establishes procedures over companies specializing in the financing of insurance premiums." 14 H.R.Proc., Pt. 7, 1971 Sess., p. 3174.
For all of the above stated reasons, the defendant's motion for summary judgment is granted. There is no genuine issue of fact that the defendant's cancellation of the plaintiff's policy with Scottsdale Insurance Company was wrongful. This court has determined, as a matter of law, that the cancellation thought to have been effectuated by the defendant and any action taken by Scottsdale Insurance Company subsequent to the purported cancellation is a nullity.
Richard P. Gilardi, Judge